1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MICHELLE R. CHULICK-PEREZ,                No.  2:13-cv-02329-TLN-DAD

12              Plaintiff,

13        v.                                   **MEMORANDUM AND ORDER**

14   CARMAX AUTO SUPERSTORES
     CALIFORNIA, LLC and DOES 1 through
15   75, inclusive,

16              Defendants.

17

18        The matter is before the Court on Defendant CarMax's Motion to Dismiss (ECF No. 5)

19   the Complaint (ECF No. 1-1).  The Complaint alleges violations of California law and is before

20   this Court on diversity jurisdiction.  Plaintiff Michelle Chulick-Perez's claims stem from the

21   purchase of a used vehicle, which allegedly was defective, and Defendant's alleged policies to

22   conceal the true condition of the vehicles it sells.  Plaintiff alleges violations of 1) an implied

23   warranty of merchantability, as codified in the Song-Beverly Consumer Warranty Act

24   (hereinafter "Song-Beverly Act"); 2) the Consumer Legal Remedies Act (hereinafter "CLRA");

25   3) California's Unfair Competition Law (hereinafter "UCL"); and 4) fraud and deceit.  For the

26   reasons discussed below, the Motion to Dismiss is GRANTED with leave for Plaintiff to amend.

27   / / /

28   / / /

1   I.   **Background**

2       A.   **Factual Allegations**

3       On December 16, 2011, Plaintiff Michelle Chulick-Perez (hereinafter "Plaintiff") bought a

4   2003 BMW X5 (hereinafter "the vehicle") from Defendant CarMax Auto Superstores, LLC

5   (hereinafter "Defendant") in Roseville, California.  (ECF No. 1-1 ¶6.)  Plaintiff also purchased a

6   MaxCare Service contract.  (ECF No. 1-1 ¶8.)  Plaintiff felt secure buying a vehicle from

7   Defendant because of its representations regarding the certification, quality, and inspection of its

8   vehicles, as made by Defendant in its radio and television advertisements.  (ECF No. 1-1 ¶7.)

9   Plaintiff also met with a salesperson employed by Defendant who told her the vehicle had been

10  inspected and was in great condition.  (ECF No. 1-1 ¶8.)

11      Plaintiff alleges Defendant makes extensive use of the term "certified" in its sales,

12  promotions, and advertising.  Plaintiff alleges specifically that the vehicles it sells are "CarMax

13  Quality Certified" and that the inspection it performs is a "Certified Quality Inspection."  (ECF 1-

14  1 No. ¶12.)  Plaintiff was not provided the results of Defendant's inspection report, and instead

15  found a "generic list" of inspected components in the glove box after purchasing the vehicle.

16  (ECF 1-1 No. ¶¶14-15.)  Plaintiff further claims that Defendant, pursuant to a company policy,

17  actively suppressed and concealed the results of its true inspection of her vehicle, which is

18  contained in a "CarMax Quality Inspected" ("CQI") checklist and/or report.  (ECF 1-1 ¶16-17.)

19  Plaintiff contends that Defendant destroyed the CQI checklist prior to her purchase.  (ECF No. 1-

20  1 ¶16.)

21      On January 11, 2012, Plaintiff took her car to Defendant's repair facility because the

22  windshield wipers weren't working and one of the tires, at the time of purchase, was a spare.

23  (ECF No. 1-1 ¶28.)  Plaintiff states that since the date of purchase she has taken the vehicle to

24  repair facilities at least thirteen times in order to repair defects that include: a leaking valve

25  gasket, shaking of the vehicle at speeds over 55 MPH, rattling of the doors, failure of the air

26  conditioner, the "check engine" light turning on multiple times, and problems with the rear

27  control arm bushings, steering rack, and the left front turn signal.[1]   (ECF No. 1-1 ¶29.)  Plaintiff

28

---

[1] The Complaint is not forthcoming as to whether these repairs were performed exclusively at Defendant's facilities.

1  also states the vehicle had 59,000 miles on the odometer at the time of purchase, though Plaintiff

2  questions the accuracy of this reading. (ECF No. 1-1 ¶30.)

3         Plaintiff now brings suit alleging violations of 1) an implied warranty of merchantability,

4  as codified in the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*; 2) the CLRA, Cal. Civ. Code

5  § 1750 *et seq.*; 3) the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; and 4) general fraud and

6  deceit.

7         **B.      Procedural History**

8         Plaintiff filed the Complaint (ECF No. 1-1) in Placer County Superior Court, on

9  September 20, 2013.  On November 8, 2013, Defendant removed to this Court on the basis of

10  diversity jurisdiction. (ECF No. 1.) Defendant subsequently filed a Motion to Dismiss the

11  Complaint on November 15, 2013.  (ECF No. 5.)  Plaintiff has filed an Opposition (ECF No. 8) to

12  the Motion to Dismiss, and Defendant has filed a Reply to the Opposition (ECF No. 9).

13         **C.      Standard of Review on a Motion to Dismiss**

14         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

15  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

16  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

17  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

18  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

19  relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

20  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

22  662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

23         A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic

24  recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556

25  U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

26  conclusory statements, do not suffice.").  Ultimately, a court may not dismiss a complaint in

27  which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."

28  *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570).  This plausibility inquiry is "a

1    context-specific task that requires the reviewing court to draw on its judicial experience and

2    common sense." *Id.* at 679.

3

4    **II.    Discussion**

5         **A.    Breach of implied warranty of merchantability**

6         Plaintiff's breach of implied warranty of merchantability claim is founded in the Song-

7    Beverly Act, Cal. Civ. Code §1790 *et seq.* (*See* ECF No. 1-1 ¶¶48-59.) The Song-Beverly Act

8    provides that "[a]ny buyer of consumer goods who is damaged by a failure to comply with any

9    obligation under … [an] implied warranty … may bring an action for the recovery of damages

10   and other legal or equitable relief." Cal. Civ. Code § 1794(a). The Act further states that

11   "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that

12   are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's

13   implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Unlike express

14   warranties, which are contractual in nature, the implied warranty of merchantability arises by

15   operation of law. Unless specific disclaimer methods are employed, an implied warranty of

16   merchantability arises and accompanies every retail sale of consumer goods. *See Steiny & Co.,*

17   *Inc. v. California Electric Supply Co.*, 79 Cal. App. 4th 285, 295 (2000) ("The [Cal. Uniform

18   Commercial Code] imposes warranties of merchantability by operation of law absent contractual

19   modification or disclaimer.").

20        An initial matter before the Court is which standard under the Song-Beverly Act applies to

21   the sale of a vehicle. Defendant urges the Court to adopt the standard from *American Suzuki*

22   *Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1294 (1995), which provides that a breach

23   of warranty may be found if the defect is "so basic it renders the vehicle unfit for its ordinary

24   purpose of providing transportation." In that case, the issue was whether class-action plaintiffs,

25   who alleged they suffered no personal injury or property damage from a vehicle they claimed was

26   defectively designed, and who conceded that the vehicle remained fit for its ordinary purpose,

27   could still bring an action for breach of implied warranty. *Id.* at 1292. The alleged defect was "a

28   roll-over propensity by reason of a high center of gravity and a narrow [track width]." *Id.* at

4

1294.  The appellate court determined the class should not be certified, reasoning that the implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead it provides for a minimum level of quality." *Id.* at 1294 (quoting *Skelton v. General Motors Corp.* 500 F. Supp. 1181, 1191 (N. D. Ill. 1980)).  "[T]he implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Id.  See also Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 405-406 (2003), providing that the breach of implied warranty "means the product did not possess even the most basic degree of fitness for ordinary use."

Plaintiff urges the Court to adopt the broader standard from *Isip v. Mercedes-Benz USA, LLC* 155 Cal. App. 4th 19 (2007).  In that case, plaintiff alleged defects that prima facie are more similar to the defects alleged here, including an air conditioner that emitted an offensive smell; inauspicious noises coming from the brake, transmission and engine; problems in shifting gears; fluid leaks; and white smoke coming from the exhaust system.  *Id.* at 22.  At issue on appeal was the trial court's exclusion of a proposed jury instruction that stated: "In the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic that it renders the vehicle unfit for its ordinary purpose of providing transportation." *Id.* at 23.  Instead, the trial court instructed the jury that, "Fitness for the ordinary purpose of a vehicle means that the vehicle should be in safe condition and substantially free of defects." *Id.*  In affirming the trial court's exclusion of the more rigorous instruction, the appellate court held that:

> Defining the warranty in terms of a vehicle that is "in safe condition and substantially free of defects" is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used. On the other hand, [an] attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability. We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.

*Id.*

5

1    Given the context-specific task of adjudicating a motion to dismiss, a review of recent

2 federal case law indicates that both standards are relevant.  This Court considers whether the

3 vehicle is fit for its intended purpose of transportation, as indicated by *American Suzuki*.

4 However, a bright-line, total inoperability is not required to survive dismissal, as indicated by

5 *Isip*.  Relevant to the Court's review is whether the defect is alleged to "compromise the vehicle's

6 safety, render it inoperable, or drastically reduce its mileage range."  *Troup v. Toyota Motor*

7 *Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (also discussing that "the alleged defect in Isip

8 drastically undermined the ordinary operation of the vehicle … By contrast, the defect alleged by

9 [plaintiff] did not implicate the [vehicle's] operability; rather, it merely required [plaintiff] to

10 refuel more often").  *See Avedisian v. Mercedes-Benz USA, LLC*  2013 WL 2285237, at *5 (C.D.

11 Cal. May 22, 2013) (allegations that coating of vehicle's interior trim pieces flaked, cracked, and

12 peeled, thereby creating sharp edges that caused lacerations on passenger's arms; district court

13 applied the *Isip* standard and found plaintiff had adequately pled a claim); *Aguila v. General*

14 *Motors LLC* 2013 WL 3872502, at *7 (E.D. Cal. July 25, 2013) (allegations of steering wheel

15 locking, loss of power steering while in motion, steering wheel instability, knocking, bumping or

16 grinding noises while turning, and/or total steering wheel failure; district court considered *Isip*

17 and *American Suzuki* and found plaintiff had adequately pled a claim); *Keegan v. American*

18 *Honda Motor Co.,* 838 F. Supp. 2d 929, 946 (C.D. Cal. Jan. 6, 2012) (allegations of a defective

19 rear suspension; district court considered *Isip* and *American Suzuki* and found Plaintiff had

20 adequately pled a claim).  *See also Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir.

21 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability

22 is simply a guarantee that they will operate in a safe condition and substantially free of defects.

23 Thus, where a car can provide safe, reliable transportation, it is generally considered

24 merchantable.").

25    Here, Plaintiff does not allege that the vehicle's safety has been compromised or that its

26 mileage range has been drastically reduced.  *See Troup*, 545 Fed. Appx. at 669.  Plaintiff does not

27 allege that the vehicle lacks a basic degree of fitness for ordinary use.  *See Mocek*, 114 Cal. App.

28 4th at 405.  Plaintiff does not allege that the car has failed to provide safe, reliable transportation.

1   *See Carlson*, 883 F.2d at 289.  The combination of defects alleged by Plaintiff also does not

2   match the degree to which the defects drastically undermined the vehicle's operation in *Isip*.  *See*

3   *Isip* 155 Cal. App. 4th at 22; *Troup*, 545 Fed. Appx. at 669.  Plaintiff contends that the vehicle

4   "had substantial mechanical defects," but does not allege with sufficient factual specificity the

5   degree to which these defects implicate the vehicle's fitness or operability.  (*See* ECF No. 1-1

6   ¶56.)  Therefore, Plaintiff has not maintained a viable claim for breach of implied warranty of

7   merchantability, on the basis of the alleged defects.  Plaintiff has not alleged sufficient factual

8   content to withstand the motion to dismiss.  This claim is dismissed with leave to amend.[2]

9        **B.**    **Breach of the CLRA and the UCL**[3]

10        i.   <u>Plaintiff's contentions</u>

11        Plaintiff contends Defendant violated California's Consumer Legal Remedies Act and

12   Unfair Competition Law by: "1) Misrepresenting that the vehicle had been subject to a thorough

13   125-point inspection; 2) Misrepresenting that the vehicle was "Certified", despite failing to

14   provide a completed inspection report detailing all of the components inspected prior to sale; 3)

15   Failing to provide an inspection report for the vehicle at any time that complies with California

16   law; 4) Failing to disclose the defective nature of the vehicle; 5) Calling the vehicle "Certified"

17   when Defendant does not oversee, supervise and/or enforce any "certification" standards; 6)

18   Using the terms "Certified," "Certify," and/or similar terms in the promotion, sales, and

19   advertising of the vehicle, despite failing to provide a completed inspection report indicating all

20   the components inspected prior to sale; 7) Destroying the CQI/VQI Checklist after the CQI/VQI

---

[2] The Court observes that two additional matters bear relevance to the sufficiency of this claim.  First, the Complaint does not elaborate on whether the alleged defects arose within the warranty period for breach of an implied warranty of merchantability.  *See* Cal. Civ. Code § 1795.5(c) (providing for the applicable time frame).  If Plaintiff is claiming that the defects were latent and discovered outside of the warranty period, then she can provide relevant information to support this claim.  *See Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1310 (2009).  Second, the Complaint does not detail whether and to what extent the repairs to the vehicle were adequately performed.  Plaintiff claims that Defendant sells "a high-profit service contract that does not cover the parts required for a luxury vehicle," but does not elaborate on this claim.  (ECF No. 1-1 ¶39.)  Plaintiff should address these matters with greater factual specificity.

[3] In *Sandoval v. Mercedez-Benz*, CV-1300908 MMM (OPx), (C.D. Cal. Sept. 24, 2013), the district court provides an excellent discussion of the statutory background regarding CLRA and UCL claims.  The court's discussion and disposition in that case (granting defendant's motion to dismiss) considers claims that are nearly identical, substantively and legally, to the claims made in the instant complaint; much of the statutory background in this section is taken verbatim from *Sandoval*.

1   inspection took place, in violation of 13. C.C.R. 272.00 and 13 C.C.R. 272.02; 8) Violating

2   Vehicle Code § 11713.18; 9) Selling a vehicle as "Certified" that would not pass a legitimate

3   certification inspection; 10) Selling a vehicle as "Certified" that is in need of substantial repair;

4   11) Actively concealing and suppressing the results of the vehicle inspection when it had a duty

5   to disclose those results; and 12) Selling a high-profit service contract that does not cover the

6   parts required for a luxury vehicle."  (ECF No. 1-1 ¶¶39, 62).

7          The Court notes that relative to the claims in the instant argument, and for the purposes of

8   organizing the Court's discussion, most of Plaintiff's allegations consist of two types: those

9   regarding affirmative misrepresentations made by Defendant, and those regarding fraudulent

10  omissions made by Defendant.

11         ii.     The CLRA and the UCL

12         The CLRA prohibits various illegal "unfair methods of competition and unfair or

13  deceptive acts or practices undertaken by any person in a transaction intended to result or which

14  results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code. § 1770(a).

15  Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  *Colgan v.*

16  *Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006) (quoting *Nagel v. Twin*

17  *Laboratories, Inc.,* 109 Cal. App. 4th 39, 54 (2003).  A "reasonable consumer" is an "ordinary

18  consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting

19  and judging a product, [or] in the process of its preparation or manufacture."  *Id.* (citing *1A*

20  *Callmann on Unfair Competition, Trademarks and Monopolies* § 5:17 (4th ed. 2004)).

21         The UCL, codified in Cal. Business & Professions Code § 17200 *et seq.*, prohibits "'any

22  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

23  advertising.'"  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1149 (N.D. Cal.

24  2010) (quoting Cal. Bus. & Prof. Code § 17200).  "'An act can be alleged to violate any or all of

25  the three prongs of the UCL – unlawful, unfair, or fraudulent'" *Id.* (quoting *Berryman v. Merit*

26  *Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007)).

27         In the instant case, the facts underlying Plaintiff's claims under both the CLRA and the

28  UCL are the same.  (*See* ECF No. 1-1 ¶¶10, 62).  Plaintiff alleges that the UCL claim arises under

8

1    the "unlawful" prong of the UCL, viz à viz the CLRA claim.  (ECF No. 8 at 22.)  That is, the

2    argument is that if Plaintiff can properly allege a violation of the CLRA, then she will also have

3    met the "unlawful" prong of the UCL.  Thus, the Court will evaluate and discuss the CLRA and

4    UCL claims together.[4]

5            iii.    FRCP 9(b) applies to the CLRA and UCL claims

6            Defendant asserts that Plaintiff's CLRA and UCL claims are premised on fraud, and

7    therefore must be dismissed because they are not pled with the particularity required by Rule 9(b)

8    of the Federal Rules of Civil Procedure.  (ECF No. 5-1 at 25-27.)  Claims alleging violations of

9    the CLRA and UCL that are based on fraudulent conduct must satisfy Rule 9(b).  *See Kearns v.*

10   *Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) ("The CLRA prohibits 'unfair methods of

11   competition and unfair or deceptive acts or practices undertaken by any person in a transaction

12   intended to result or which results in the sale of … goods or services to any consumer '… [W]e

13   have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for

14   violations of the CLRA.")

15           Plaintiff argues that Rule 9(b) does not apply because the CLRA does not prohibit merely

16   fraud, but also "unfair or deceptive" methods, acts, or practices, which is substantially broader

17   than fraudulent acts.  (ECF No. 8 at 25.)  Plaintiff points out, for example, that most violations of

18   the CLRA do not contain references to "intent", which is an essential element of a fraud claim.

19   For example, Cal. Civ. Code § 1770(a)(9) prohibits "(a)dvertising goods or services with intent

20   not to sell them as advertised" (emphasis added).  However, Plaintiff's arguments regarding

21   "certification" are covered under § 1770(a), subsections (5) and (14), which do not explicitly

22   provide for an "intent" to misrepresent relevant information.[5]   (ECF No. 8 at 20.)

23           As the Ninth Circuit has recognized, fraud is not an essential element of a claim under the

24

25   [4] If Plaintiff wishes to argue that the UCL claim arises irrespective of the CLRA claim, Plaintiff should address this in further briefing, with citation to applicable law.

26   [5] Cal. Civ. Code § 1770(a)(5): it is unlawful to "[represent that goods or services have sponsorship, approval,
27   characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have." Cal. Civ. Code § 1770(a)(14): it is unlawful to "[represent] that a transaction confers or involves rights, remedies, or obligations which it does not have
28   or involve, or which are prohibited by law."

1   CLRA.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003).  "To require

2   that plaintiffs prove more than the [CLRA] statute itself requires would undercut the intent of the

3   legislature in creating a remedy separate and apart from common-law fraud."  *Nordberg v.*

4   *Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006).  Relief under the CLRA is

5   available to those consumers who suffer "damage as a result of the use or employment by any

6   person of a method, act, or, practice declared to be unlawful under section 1770."  Cal. Civ. Code

7   § 1780(a).  Thus, for a misrepresentation to be actionable under § 1770 it need only result in

8   damage to the consumer.  *See Nordberg*, 445 F. Supp. 2d at 1097.

9          However, a plaintiff may nonetheless allege that a defendant engaged in a unified course

10   of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.  In

11   such event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading as

12   a whole must satisfy the particularity requirement of Rule 9(b).  *Kearns*, 567 F.3d at 1125.

13          Accordingly, this Court must determine whether Plaintiff's claims "sound in fraud."  The

14   Court finds that they do.  Among other misrepresentations regarding the vehicle's quality and

15   condition, Plaintiff claims as follows: that Defendant misrepresented that the vehicle was

16   certified; that these misrepresentations were made via advertisement and via a salesperson at a

17   CarMax facility; that Plaintiff relied upon these misrepresentations in purchasing the vehicle; and

18   that these representations resulted in damages, for which Plaintiff is seeking both compensatory

19   and punitive relief.  (*See* ECF No. 1-1 ¶¶6-31.)  Based on the Court's finding that Plaintiff's

20   claims "sound in fraud," Plaintiff's pleading must comport with the requirements of Fed. R. Civ.

21   Proc. 9(b).

22          iv.     Heightened pleading requirement of FRCP 9(b)

23           Under federal pleading standards, "a party must state with particularity the circumstances

24   constituting fraud or mistake."  Fed. R. Civ. Proc. 9(b).  "Rule 9(b) demands that, when

25   averments of fraud are made, the circumstances constituting the alleged fraud be specific enough

26   to give defendants notice of the particular misconduct … so that they can defend against the

27   charge."  *Vess*, 317 F.3d at 1106.  "To avoid dismissal for inadequacy under Rule 9(b) … [a]

28   complaint would need to state the time, place, and specific content of the false representations as

1    well as the identities of the parties to the misrepresentation.*" Edwards v. Marin Park, Inc.*, 356

2    F.3d 1058, 1066 (9th Cir. 2004).  Furthermore, while "statements of the time, place, and nature of

3    the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are

4    insufficient." *Moore v. Kayport Package, Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  "For

5    corporate defendants, a plaintiff must allege the names of the persons who made the allegedly

6    fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote,

7    and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, No. C 11-1315 PJH, WL

8    2748650, at *6 (N.D. Cal. July 13, 2011).

9            When a claim rests on alleged fraudulent omission, the Rule 9(b) standard is somewhat

10   relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as

11   he is not alleging an act, but a failure to act." *Huntair, Inc.v. Gladstone*, 774 F. Supp. 2d 1035,

12   1044 (N.D. Cal. 2011) (citing *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal.

13   1987).  Nonetheless, a plaintiff alleging fraudulent omission or concealment must plead the claim

14   with particularity.  "Because the Supreme Court of California has held that nondisclosure is a

15   claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be

16   pleaded with particularity under Rule 9(b)." *Kearns*, 567 F.3d at 1126.  "[T]o plead the

17   circumstances of omission with specificity plaintiff must describe the content of the omission and

18   where the omitted information should or could have been revealed, as well as provide

19   representative samples of advertisements, offers, or other representations that plaintiff relied on to

20   make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche

21   Cars North America, Inc.*, No. CV 11-9405 CAS, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22,

22   2012.)

23            v.    Plaintiff's allegations of affirmative misrepresentations

24            Plaintiff  alleges that Defendant affirmatively misrepresented that the vehicle had been

25   subject to a thorough 125-point inspection; that it failed to provide an accurate inspection report

26   for the vehicle and in fact destroyed its record of inspection (a "CQI" checklist and/or report);

27   that it made various representations regarding the condition and quality of the vehicle; and that it

28   made various representations regarding the vehicle's certification, despite the fact that, Plaintiff

1  contends, the vehicle was not certified and was defective.  (*See* ECF No. 1-1 ¶¶39, 62).

2       In *Kearns*, the Ninth Circuit applied Rule 9(b) to CLRA and UCL claims that alleged

3  fraud in the sale of certified pre-owned vehicles.  Ford Motor Company ("Ford") represented that

4  it put the vehicles through a rigorous inspection in order to certify that their safety, reliability, and

5  road-worthiness surpassed those of non-certified used vehicles.  *Kearns*, 567 F.3d at 1112-23.

6  Ford promoted the program through print, broadcast, online, and other media; local dealerships

7  were responsible for the sale and servicing of the vehicles.  *Id.* at 1123.  Plaintiffs asserted that

8  Ford made false and misleading statements concerning the safety and reliability of the vehicles.

9  Specifically, they alleged that Ford misrepresented the quality of the complete repair and

10 accident-history report, the level of training that inspecting technicians received, and the rigor of

11 the certification process.  *Id.*  They asserted they were exposed to Ford's representations through

12 its televised national marketing campaign, sales materials at the dealership where they bought

13 their vehicles, and sales personnel working at the dealership.  *Id.* at 1125-26.  The Ninth Circuit,

14 revealing the complaint de novo, held that the allegations were not sufficiently particular.  The

15 Ninth Circuit stated:

16           Kearns fails to allege in any of his complaints the particular
            circumstances surrounding such representations.  Nowhere in the
17          [complaint] does Kearns specify what the television advertisements
            or other sales material specifically stated.  Nor [does] Kearns
18          specify when he was exposed to them or which ones he found
            material.  Kearns also fail[s] to specify which sales material he
19          relied upon in making his decision to buy a CPO [certified pre-
            owned] vehicle.  Kearns does allege that he was specifically told
20          'CPO vehicles were the best used vehicles available as they were
            individually hand-picked and rigorously inspected used vehicles
21          with a Ford-backed extended warranty.'  Kearns does not, however,
            specify who made this statement or when this statement was made.
22          Kearns fail[s] to articulate the who, what, when, where, and how of
            the misconduct alleged.  The pleading of these neutral facts fails to
23          give Ford the opportunity to respond to the misconduct alleged.
            Accordingly, these pleadings do not satisfy the requirement of Rule
24          9(b) that 'a party must state with particularity the circumstances
            constituting fraud ….
25

26 *Kearns*, 567 F.3d at 1126.

27       *Kearns* directs this Court's evaluation of the adequacy of the Complaint herein.  First,

28

1   much as the plaintiff in *Kearns* failed to allege with specificity when certain fraudulent statements

2   were made, the instant Complaint does not specify when Plaintiff saw and heard the television

3   and radio advertisements she contends were misleading.  (*See* ECF No. 1-1 ¶2.)  The Complaint

4   does not specify when and how Defendant communicated that the vehicle she purchased was

5   certified.[6]   (*See* ECF No. 1-1 ¶3.)  With respect to representations made about the quality of the

6   vehicle, the Complaint states that Plaintiff met with a particular person at the CarMax store in

7   Roseville, who told her the car "had been inspected and was in great condition."  (ECF No. 1-1

8   ¶3.)  However, Plaintiff does not elaborate on how or what Defendant represented about the

9   condition of the vehicle, such that Defendant (or the Court) is able to determine whether the

10   problems Plaintiff experienced with the vehicle contradict the representations Defendant

11   purportedly made at the time Plaintiff purchased it.  With respect to allegations that Defendant

12   misrepresented that it had performed a 125-point inspection, Plaintiff similarly does not elaborate

13   on when and what statements Defendant made regarding this inspection.  To the extent that

14   Plaintiff makes a broad claim regarding the legitimacy of the inspection required by law, Plaintiff

15   does not specify what a legitimate inspection consists of, or when and how Defendant represented

16   to her that the vehicle had passed such an inspection.

17       Because Plaintiff does not plead with particularity the affirmative misrepresentations

18   alleged under her CLRA and UCL claims, these allegations are deficient under Rule 9(b).

19       vi.    Plaintiff's allegations of fraudulent omissions

20       Plaintiff also contends that Defendant failed to disclose the defective nature of her vehicle

21   and actively concealed and suppressed the results of vehicle inspections when it had a duty to

22   disclose those results.  For an omission to be actionable under the CLRA or UCL, it must be

23   either 1) "contrary to a representation actually made by the defendant" or 2) "an omission of a

24   fact the defendant was obligated to disclose."  *Daugherty*, 144 Cal. App. 4th at 835-36.  The

25   Court "cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is

26   likely to deceive anyone within the meaning of the UCL."  *See id.* at 838.

27   ───────────
[6] Plaintiff does not direct the Court – either to a statute or to case law – that describes the standard for certification that the Court must apply here.

28

13

1    As discussed, Plaintiff has failed to allege sufficiently that Defendant represented that the

2    vehicle was of a particular quality and condition, or that Defendant made particular contentions

3    about it being certified.  The Court cannot determine whether Defendant's conduct in failing to

4    disclose that the car was defective was contrary to a representation Defendant actually made.  *See*

5    *Daugherty*, 144 Cal. App. 4th at 834 (holding that a plaintiff had not stated a claim under the

6    UCL because plaintiff had not alleged "any representation by [the defendant] that its automobiles

7    had any characteristics they do not have, or are of a standard or quality they are not").

8    The Court must now determine if Defendant omitted information in violation of a duty to

9    disclose this information.  Section 11713.18(a) of the California Vehicle Code, which is part of

10   California's Car Buyer's Bill of Rights, states:

11   It is a violation of this code for the holder of any dealer's license issued under this article

12   to advertise for sale or sell a used vehicle as "certified" or use any similar descriptive term in the

13   advertisement or the sale of a used vehicle that implies the vehicle has been certified to meet the

14   terms of a used vehicle certification program if any [of the listed provisions (1)-(9) of this

15   section] apply".

16   Cal. Veh. Code § 11713.18(a).  Provision (6) of § 11713.18(a) provides for a violation

17   when: "Prior to sale, the dealer fails to provide the buyer with a completed inspection report

18   indicating all the components were inspected."  Plaintiff claims that §11713.18(a)(6) is violated

19   because no completed inspection report was provided, either before or after the sale.  (ECF No. 1

20   ¶77.)  Plaintiff claims that pursuant to a corporate policy, Defendant placed a generic report

21   and/or checklist in the glove box, which Plaintiff did not discover until she purchased the vehicle.

22   Plaintiff claims this report is insufficient.  (ECF No. 1 ¶78.)  Plaintiff elaborates as follows: the

23   checklist lists "Exhaust", without an indication of whether an exhaust system is installed or

24   inspected; and the vehicle does not have a manual transmission, yet the CQI lists "Manual (starts

25   w/clutch in only" and "Clutch operation (manual trans.)".  (ECF No. 8 at 14.)  Plaintiff further

26   claims that Defendant prepares a valid inspection report, a "CQI" report and/or checklist, as a

27   standard part of its reconditioning process of vehicles, but that it is Defendant's corporate policy

28   to destroy this checklist.  (ECF No. 8 at 15.)

14

1    Defendant argues in response that the statute only requires that car dealers provide

2    purchasers with a report stating the parts that were inspected, and that it had no duty under the

3    statute to disclose defects found during inspection.  (ECF No. 35 at 26.)

4    Looking first to the language of § 11713.18(a)(6), nothing in this language explicitly

5    requires Defendant to disclose the results of the inspection, but only that a report must list the

6    components the car dealer inspected.  Interestingly, a review of the legislative history of the

7    statute leads the Court to find that car dealers are not required to disclose the results of a pre-sale

8    inspection.[7]   The legislature enacted the Car Buyer's Bill of Rights, Cal. Veh. Code § 11713.18,

9    *et seq.*, to "place limits and restrictions on motor vehicle dealers."  (AB 68, § 1(b); ECF No. 9-1,

10   Ex. 4 at 106.)  A May 5, 2005 draft of the bill required that the reports "indicat[e] all the

11   components inspected pursuant to the vehicle certification program and certif[y] that all of the

12   inspected components meet the express written standards of the vehicle certification program."

13   (*See* Amend. to AB 68, May 5, 2005; ECF No. 9-1, Ex. 1 at 57.)  Future drafts of the bill,

14   however, delete this language; by June 9, 2005, the current statutory text, which requires only that

15   the report "indicat[e] all the components inspected," had been substituted.[8]  (*See* Amend. to AB

16   68, June 9, 2005; ECF No. 9-1, Ex. 2 at 82.)

17   "The rejection of a specific provision contained in an act as originally introduced is 'most

18   persuasive' that the act should not be interpreted to include what was left out."  *Murphy*, 40 Cal.

19   4th at 1107.  That the California legislature considered, and rejected, an earlier draft of the Car

20   Buyer's Bill of Rights that would have required disclosure of the results of an inspection is

21   persuasive that it did not intend to require that car dealers provide more than a list of the

22

[7] *See Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1102-03 (2007) (discussing that, in construing a
23   statute, "it is well-settled that [courts] must look first to the words of the statute"; where the plain language of the
statute is susceptible of more than one interpretation, courts "look to extrinsic sources, such as the ostensible
24   objectives to be achieved by the statute, the evils to be remedied, the legislative history, public policy, contemporary
administrative construction and the statutory scheme of which the statute is a part.")  Additionally, Defendant
25   requests that the court take judicial notice of the legislative history of the Car Buyer's Bill of Rights, Cal. Veh. Code
§ 11713.18 *et seq*.  (*See* ECF No. 9-1, Ex. 1-4.)  Under Rule 201 of the Federal Rules of Evidence, the court may take
judicial notice of the legislative history of state statutes.  *See e.g., Territory of Alaska v. Am. Can Co.*, 358 U.S. 224,
26   226 (1959); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005).  The Court accordingly grants Defendant's
request for judicial notice of the legislative history of the Car Buyer's Bill of Rights.

27

[8] The Court's discussion with respect to the legislative history of AB 68 mirrors the discussion in *Sandoval v.*
28   *Mercedes-Benz*, CV-1300908 MMM (OPx), at *26-28 (C.D. Cal. Sept. 24, 2013).

15

1    components inspected.  Plaintiff does not direct the Court to any authority indicating that

2    Defendant had a duty to reveal the results of an internal inspection report.  Consequently, the

3    Court cannot find that Defendant had this duty.  Accordingly, Plaintiff has not adequately alleged

4    a fraudulent omission under the CLRA or the UCL.

5         However, Plaintiff could allege in a subsequent complaint that Defendant had a duty to

6    disclose material defects in the vehicle.  "Under California law, there are four circumstances in

7    which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship

8    with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to

9    the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4)

10   when the defendant makes partial representations but also suppresses some material facts." *Smith*

11   *v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010).  Plaintiff may be able to provide

12   adequate foundation for one of these circumstances.

13        Plaintiff has not alleged sufficient factual content regarding the CLRA and the UCL to

14   withstand Defendant's dismissal motion, and therefore these claims are dismissed with leave to

15   amend.

16        **C.    Fraud**

17        To plead a fraud claim based on affirmative misrepresentations, a party must allege: (1) a

18   knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3)

19   justifiable reliance by the plaintiff; and (4) resulting damages. *Croeni v. Goldstein*, 21 Cal. App.

20   4th 754, 758 (1994).

21        To plead a fraud claim based on fraudulent omissions, a party must allege: (1) the

22   defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose

23   the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with

24   intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted

25   differently if he had known of the concealed or suppressed fact; and (5) as a result of the

26   concealment or suppression the plaintiff sustained damage. *See Hahn v. Mirda*, 147 Cal. App.

27   4th 740, 748 (2007).

28        Plaintiff's fraud claim is based on Defendant's purportedly false and misleading

16

advertisements claiming that its cars are certified, among other unspecified misrepresentations regarding the condition and quality of the vehicle (i.e. affirmative misrepresentations).  The fraud claim is also based on Defendant's concealment of the results of an inspection it made (i.e. fraudulent omissions).  (*See* ECF No. 1-1 ¶¶68-82.)  Plaintiff's claim is deficient because she fails to plead with particularity when she saw or heard the advertisements and other misrepresentations; Plaintiff also fails to specify what the advertisements or misrepresentations said that was false or misleading.  Plaintiff's claim is also deficient because she has failed to show that Defendant owed a duty to disclose the results of the inspection and failed adequately to allege the nature and impact of the defects in the car such that she has plausibly pled they were material.

Plaintiff's claim of fraud is dismissed with leave to amend.

## III.   Conclusion

- •   Defendant's Motion to Dismiss (ECF No. 5) the Complaint (ECF No. 1-1) is GRANTED.

- •   Defendant's Motion to Strike (ECF No. 6) portions of the Complaint is moot.

- •   Plaintiff has leave to amend, and shall file and serve, a First Amended Complaint within 14 days of entry of this order.  The First Amended Complaint shall address the specific deficiencies highlighted in this Order.

- •   Defendant shall file a responsive pleading within 21 days of service of the First Amended Complaint.

IT IS SO ORDERED.

Dated: May 20, 2014

Troy L. Nunley
United States District Judge

17