1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MICHELLE R. CHULICK-PEREZ,

12                                                No.  2:13-cv-2329-TLN-DAD
             Plaintiff,
13                                                **MEMORANDUM AND ORDER**

14        v.

15   CARMAX AUTO SUPERSTORES
     CALIFORNIA, LLC, and DOES 1 through
16   75,

17
             Defendants.
18

19        The matter is before the Court on Defendant CarMax Auto Superstores California LLC's

20   ("Defendant") Motion to Dismiss (ECF No. 15) Plaintiff Michelle R. Chulick-Perez's

21   ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 26).  For the reasons discussed below,

22   Defendant's motion to dismiss is GRANTED, with leave for Plaintiff to amend.

23        **I. Facts**

24        Plaintiff was in the market for a used vehicle with all-wheel drive capability.  In the

25   months prior to Plaintiff's purchase from Defendant, in or about November 2011, Plaintiff viewed

26   and heard Defendant's television and radio advertisements, which stated that Defendant sold

27   quality, "certified" vehicles.  At various points thereafter, Plaintiff visited Defendant's website,

28   and viewed statements to the effect that Defendant's vehicles were certified.  (ECF No. 26 ¶¶ 11–

                                            1

1  14.)

2         On December 15, 2011, Plaintiff viewed an advertisement for the vehicle she ultimately

3  purchased, a 2003 BMW X5, on Defendant's website.  Plaintiff e-mailed Defendant to inquire

4  about the vehicle, and was informed via a response email that another customer had reserved it.

5  However, the following morning, on December 16, 2011, Plaintiff called Defendant to inquire

6  again about the status of the vehicle, and was informed it was available.  Later that day, Plaintiff

7  drove to one of Defendant's dealerships, in Roseville, CA, where she discussed the features of the

8  vehicle with CarMax representative Chrissy Terry.  Ms. Terry told Plaintiff that "certification"

9  referred to the inspection process Defendant performed on its vehicles to ensure they were in

10 good working order.  Plaintiff purchased the vehicle.  (ECF No. 26 ¶¶ 5, 15–17.)

11        At some point either before or after the sale, Plaintiff was in receipt of a certificate (the

12 "CQI Certificate") purporting to show a list of the vehicle components inspected prior to sale.[1]

13 Plaintiff asserts this certificate is a generic list of components inspected, numbering

14 approximately 125 items and does not contain the authentic record of Defendant's inspection

15 process.  Plaintiff asserts that the actual list of inspected items (the "CQI/VQI Checklist")

16 contains approximately 230 items, and the results of this inspection are destroyed.  (ECF No. 26

17 ¶¶ 4–10.)  Plaintiff states that if Defendant had not advertised, sold, or labeled the vehicle as

18 "certified", Plaintiff would not have purchased the vehicle.  (ECF No. 26 ¶ 17.)

19        **II.  Procedural History**

20        On September 20, 2013, Plaintiff filed her Complaint in Placer County Superior Court.

21 (ECF No. 1-1.)  Defendant removed to this Court and filed a Motion to Dismiss.  (ECF Nos. 1, 5.)

22 On May 20, 2014, this Court granted the Motion to Dismiss with leave to amend.  (ECF No. 13.)

23 On June 3, 2014, Plaintiff filed the FAC (which has been substituted with a corrected FAC filed

24

25 _____

26 [1] Plaintiff asserts that after the commencement of this lawsuit, she incurred a medical condition that may have
   affected her recollection of some facts.  Specifically, Plaintiff asserts she cannot say with certainty whether she was
   in receipt of the CQI Certificate prior to sale, or whether the CQI Certificate was placed in the glove compartment of
27 the vehicle and she did not see it until after purchase.  (ECF No. 26 ¶ 18.)  Because the Court dismisses the FAC on
   other grounds, it reserves ruling on the "prior to sale" requirement contained in Cal. Veh. Code § 11713.18(a)(6).  In
28 any event, this is a minor technicality and is non-dispositive.

1   on October 13, 2014).  (ECF Nos. 14, 26). [2]  On June 24, 2014, Defendant filed a Motion to

2   Dismiss the FAC, and a Motion to Strike.  (ECF Nos. 15, 16.)  Plaintiff has filed an opposition to

3   the Motion to Dismiss, and Defendant has filed a Reply.  (ECF Nos. 19 and 23.)

4          The FAC asserts two claims: a violation of the Consumers Legal Remedies Act

5   (hereinafter "CLRA"), Cal. Civ. Code § 1750, *et seq*.; and a violation of California's Unfair

6   Competition law (hereinafter "UCL"), Cal. Bus. and Prof. Code § 17200, *et seq*..  Plaintiff seeks

7   rescission of the purchase contract, compensatory and punitive damages, and injunctive relief.

8   (ECF No. 26 ¶¶ 35–60.)

9          **III.  Statutory Framework**

10         The starting point for Plaintiff's claim is Cal. Veh. Code § 11713.18, which provides, in

11   relevant part:

12               (a) It is a violation of this code for the holder of any dealer's license
                issued under this article to advertise for sale or sell a used vehicle as
13               "certified" or use any similar descriptive term in the advertisement
                or the sale of a used vehicle that implies the vehicle has been
14               certified to meet the terms of a used vehicle certification program if
                any of the following apply:
15
                (6) Prior to sale, the dealer fails to provide the buyer with a
16               completed  inspection  report  indicating  all  the  components
                inspected.
17
                (9) The term "certified" or any similar descriptive term is used in
18               any manner that is untrue or misleading or that would cause any
                advertisement to be in violation of subdivision (a) of Section 11713
19               of this code or Section 17200 or 17500 of the Business and
                Professions Code.
20
                [and]
21
                (b) A violation of this section is actionable under the Consumers
22               Legal Remedies Act (Title 1.5 (commencing with Section 1750) of
                Part 4 of Division 3 of the Civil Code), the Unfair Competition Law
23               (Chapter 5 (commencing with Section 17200) of Part 2 of Division
                7 of the Business and Professions Code), Section 17500 of the
24               Business and Professions Code, or any other applicable state or
                federal law. The rights and remedies provided by this section are
25               cumulative and shall not be construed as restricting any right or
                remedy that is otherwise available.
26

27

28   [2] Due to errors in the numbering of paragraphs in the original FAC, the Court permitted substitution of the FAC (ECF
     No. 14) with a corrected FAC (ECF No. 26) filed on October 13, 2014.  (*See* ECF No. 27.)  The corrected FAC (ECF
     No. 26) is the instant pleading for the purposes of Defendant's motion to dismiss.

Plaintiff also pleads a violation of Cal. Veh. Code § 11713.18 under the purview of the CLRA and the UCL.

The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices in transactions for the sale or lease of goods to consumers.  *See* Cal. Civ. Code § 1750 *et seq*.  The CLRA renders unlawful: "[r]epresenting that goods … have … characteristics … which they do not have …"; "[r]epresenting that goods … are of a particular standard, quality, or grade … if they are of another"; and "[m]isrepresenting the … certification of goods or services."  *Id*. § 1770(a)(5), (a)(7), (a)(2).  "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action" under the CLRA.  *Id.* § 1780(a).  That is, "the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."  *Meyer v. Sprint Spect.,* 45 Cal. 4th 634, 641 (2009).[3]

The UCL protects consumers and competitors by "promoting fair competition in commercial markets for goods and services."  *Duste v. Chevron Products Co.,* 738 F. Supp. 2d 1027, 1047 (N.D. Cal. 2010).  The statute defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999) (citing § 17200).  To bring a claim under the UCL, a plaintiff must have "suffered injury in fact and … lost money or property as a result of the alleged misrepresentation or unfair competition."  *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008) (quoting Cal. Bus. Prof. Code § 17204).  More specifically, standing under the UCL requires that "a party [] now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. *economic injury*, and (2) show that that economic injury was the result of i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."

---

[3] In *Meyer*, the California Supreme Court held that plaintiffs lacked standing for failing to plead actual damage under the CLRA.  Plaintiffs in *Meyer* had sued a cellular telephone company under the CLRA and the UCL, alleging that its arbitration agreement and other remedial provisions were unconscionable, although plaintiffs did not otherwise allege that these provisions had been enforced against them or caused them damage.  *Meyer,* 45 Cal. 4th at 638.

1   *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322 (2011).[4]

2           The instant FAC alleges that Defendant engaged in a unified course of fraudulent conduct

3   and relied on that course of conduct as the basis of that claim.[5]  (*See* ECF No. 26 ¶¶ 2–17.)

4   Because these allegations "sound in fraud," the FAC must comport with the particularity

5   requirements of Fed. R. Civ. Proc. 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26

6   (9th Cir. 2009).

7           **IV.  Analysis**

8               A.  Cal. Veh. Code § 11713.18

9           Cal. Veh. Code §11713.18 originally appeared in Assembly Bill 68 ("AB 68") as part of

10  the proposed Car Buyer's Bill of Rights, enacted in July 2006.[6]  As the Court discussed in its

11  previous order (ECF No. 13), the term "completed inspection report" in Cal. Veh. Code §

12  11713.18(a)(6) does not describe the scope of the required disclosure.  Nothing in the plain

13  language of the statute expressly requires Defendant to disclose the results of an inspection.

14  Furthermore, a May 5, 2005 draft of the bill required that the reports "indicat[e] all the

15  components inspected pursuant to the vehicle certification program and certif[y] that all of the

16  inspected components meet the express written standards of the vehicle certification program."

17  (Amend. to AB 68, May 5, 2005; ECF No. 9-1, Ex. 1 at 57.)  Future drafts of the bill, however,

18  delete this language; by June 9, 2005, the current statutory text, which requires only that the

19  report "indicat[e] all the components inspected," had been substituted.  (Amend. to AB 68, June

20  9, 2005; ECF No. 9-1, Ex. 2 at 82.)  "The rejection of a specific provision contained in an act as

21  originally introduced is 'most persuasive' that the act should not be interpreted to include what

22

23  [4] In *Kwikset*, the California Supreme Court held that plaintiffs had adequately alleged an injury in order to satisfy standing under the UCL.  Plaintiffs in *Kwikset* alleged that a lockset manufacturer falsely marked and sold locksets

24  labeled as "Made in U.S.A." that in fact contained foreign-made parts or involved foreign manufacture.  *Kwikset*, 51 Cal. 4th at 316.

25  [5] Plaintiff claims that Defendant misrepresented that the vehicle was certified; that these misrepresentations were made via advertisement and via a salesperson at a CarMax facility; that Plaintiff relied upon these misrepresentations

26  in purchasing the vehicle; and that these misrepresentations resulted in damages.  (*See* ECF No. 26 ¶¶ 2–17.)

27  [6] Defendant previously requested judicial notice of the legislative history of the Car Buyer's Bill of Rights in conjunction with its first motion to dismiss.  (*See* ECF 9-1, ex. 1–4.)  The Court takes judicial notice pursuant to Fed.

28  R. Evid. 201.

was left out." *Murphy v Kenneth Cole Prod., Inc.,* 40 Cal. 4th 1094, 1107 (2007).  That the California legislature considered and rejected an earlier draft of the Bill that would have required disclosure of the results of an inspection is persuasive that it did not intend that result.  *See also Sandoval v. Mercedes Benz USA et al*. cv-13-908 MMM (Opx) at 28 (C.D. Cal. Sept. 24, 2013) (adopting this view).

On the other hand, the legislative history of AB 68 indicates that its purpose was to discourage "business practices engaged in by the automobile industry and automobile dealers in particular, which discourage price transparency, limit consumer choice and take advantage of consumer ignorance."  (Bill Analysis, AB 68, June 14, 2005; ECF N. 9-1, Ex. 3 at 92.)  This stated intent supports an interpretation of the phrase "completed inspection report" that would require dealers to disclose substantive information about the actual inspection of the vehicle rather than a non-exhaustive list of generic vehicle components that may have been inspected.  Thus, "completed inspection report" could be construed as something more than a generic list of parts that may, or may not have been, inspected by Defendant.  This interpretation has been used by several district courts.[7]  *See e.g. Gullins v. CarMax*, 13-cv-9398-JAK-CW at 8 (C.D. Cal. March 14, 2014); *Lee v. CarMax*, 13-cv-7648-MWF-VBK at 12 (C.D. Cal. Dec. 2, 2013).

The Court reserves ruling on this issue, and dismisses the FAC for the reasons discussed below pertaining to an actual injury.

B.  Actual injury

Plaintiff must adequately plead that she sustained an actual injury under the CLRA or the UCL, for a claim to proceed under either of these statutes.  *See Meyer*, 45 Cal. 4th at 641; *Kwikset*, 51 Cal. 4th at 322.  Because the FAC contains no specific allegations of any defects to the vehicle, or problems of any kind, the sole basis for both her CLRA and UCL injury is that Defendant provided Plaintiff with a generic certificate incompletely showing which parts were inspected, while destroying the authentic record of the inspection it made.  By contrast, all of the cases to which Plaintiff directs the Court involve allegations of defects to a purchased vehicle.

---

[7] Plaintiffs request judicial notice of recent four district court decisions, which involved the same Defendant, CarMax Auto Superstores California, LLC.  (*See* Requ. Jud. Not., Ex. 1–4, ECF No. 20.)  The Court takes judicial notice pursuant to Fed. R. Evid. 201.

1   *See Gullins*, 13-cv-9398-JAK-CW at 2 ("within two weeks of purchasing the vehicle, it was

2   necessary to rotate and balance certain tires, align wheels, and replace windshield wiper blades

3   and two rear tires … Plaintiff then obtained a vehicle history report from Carfax, which listed

4   'structural damage' and 'accident/damage' to the rear of the vehicle."); *Lee*, 13-cv-7648-MWF-

5   VBK at 2 ("the front tire wear is uneven, the vehicle is not properly aligned, the steering wheel is

6   misaligned, the vehicle was in an accident in 2011, and the vehicle had been a rental prior to its

7   sale."); *Knapp v. CarMax*, 14-cv-1112-BRO (SPx) at 2 (C.D. Cal. July 21, 2014) (repairs were

8   required to address "alignment issues, leaking oil, replacement of a power steering hose, a

9   defective radiator, replacement of a bearing and wheel hub, replacement of the steering gear, and

10  an adjustment to a hose.").  *See also Stelzer v. CarMax*, 2013 WL 6815029 at *1 (S.D. Cal. Dec.

11  20, 2013) (the vehicle "leaked oil, had a faulty air conditioner, and was in the shop at least ten

12  times in the first year that she owned it, requiring approximately $20,000 worth of work.");

13  *Sandoval v. Mercedes Benz*, 2:13-cv-908-MMM (OPx) at 3–5 (C.D. Cal. Sep. 24, 2013)

14  (problems with the supplemental restraint system, rear suspension system, bulb failure, right and

15  left ball joint failure, camshaft plug failure, speed sensor, and others).

16       Absent any specific allegation of defects, Plaintiff's stated injury in fact is that: 1) she

17  paid for a certified car, but received an uncertified car, and therefore Defendant is liable for the

18  difference between the two; or 2) that Plaintiff would not have bought the vehicle but for

19  Defendant's misrepresentations regarding the vehicle being certified.  (ECF No. 26 ¶ 26.)  While

20  an amended complaint may satisfy these requirements based on this stated injury, the present

21  complaint is incomplete.

22       The Court so finds, for the following reasons:  First, as articulated in *Stelzer*, Cal. Veh.

23  Code § 11713.18(a)(6) requires a dealer to provide the buyer with a completed inspection report

24  prior to sale, but the absence of a report does not actually bear on whether the inspection

25  occurred.  Equally, the absence of a report does not entail that a vehicle is not certified.  "It isn't

26  the underlying paperwork that makes a car certified, after all, but CarMax's diligence in

27  conducting a rigorous exam of that car and ensuring that it is problem-free and ready to drive."

28  *Stelzer*, 2013 WL 6815029 at * 2.  In the instant case, Plaintiff makes no allegation that an

1   inspection did not occur, or that the inspection was deficient.  Plaintiff makes no allegation that

2   Defendant represented the car to be of a particular quality or condition – beyond being "certified"

3   – when in fact it was not.  In short, Plaintiff provides no reason to think that the vehicle she

4   purchased was not certified. The fact of the matter is that every case to which the Plaintiff directs

5   the Court – e.g. *Gullins, Lee, Knapp* – involved specific allegations of defects to the vehicle.

6   Such allegations are relevant to the issue of whether Defendant misrepresented the vehicle as

7   certified, but as it stands, the FAC references only a "defective" vehicle (e.g. ¶¶ 48, 58) without

8   elaboration.[8]

9        Second, to the extent that Plaintiff articulates actual damage under the CLRA, she invokes

10  *Honojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) for the proposition that the "any

11  damage" standard includes "even minor pecuniary damage."  But there is no allegation of even

12  minor pecuniary damage in the FAC.  Plaintiff concludes that she paid more for the vehicle

13  because it was labeled as "certified" (ECF No. 26 ¶ 26), but she provides no support for the claim

14  that an equivalent vehicle actually would be available for less money, by virtue of not bearing the

15  label "certified".

16       Third, with respect to standing under the UCL, the Court acknowledges that there is a

17  strong compatibility between the standard set forth in *Kwikset*, and the articulation of damage set

18  forth in the FAC.  (ECF No. 26 at ¶ 26.)  Furthermore, the California Supreme Court in *Kwikset*

19  overruled the appellate court as to the latter's finding that plaintiffs' claim was deficient because

20  they did not allege that the purchased product was defective.  *Kwikset*, 51 Cal. 4th  at 331.  That

21  is, under *Kwikset*, a plaintiff may not be required to show defects to the purchased vehicle in

22  order to establish standing.  Rather, a "consumer who relies on a product label and challenges a

23  misrepresentation contained therein can satisfy the standing requirement of section 17204 by

24  alleging, as plaintiffs have here, that he or she would not have bought the product but for the

25  misrepresentation."  *Id*. at 330.  However, there is a practical difference between the allegations at

26  issue in *Kwikset* – that a lockset manufacturer advertised locksets with the label "Made in U.S.A."

27

28  ---
    [8] If there are allegations of defects, as there were in the initial complaint, it would not appear difficult to re-allege them in a subsequent amended complaint, provided they meet the requirements of Fed. R. Civ. Proc. 11.

8

1    when in fact they were partly made in a foreign country – and the instant allegations, which

2    involve an amorphous certification process for which there is no clear definition of what

3    constitutes being "certified".  Moreover, barring Plaintiff's claim under the UCL is consistent

4    with the voter's intent in enacting Proposition 64 in 2004.  Proposition 64 sought to narrow the

5    range of actionable UCL claims, which previously could be brought by "any person acting for the

6    interests of itself, its member or the general public" and for which standing did not depend on a

7    showing of injury or damage.  *See Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal.

8    4th 223, 228 (2006); *Kwikset*, 51 Cal. 4th at 320–21.  In the instant case, there is no

9    individualized injury in the FAC, thus, the Court declines to find Plaintiff's claims actionable

10   under the CLRA and the UCL.  The FAC is dismissed with leave to amend.

11           **V.  Conclusion**

12       •   Defendant's Motion to Dismiss (ECF No. 15) the First Amended Complaint (ECF No.

13           26) is GRANTED.

14       •   Defendant's Motion to Strike (ECF No. 16) is moot.

15       •   Plaintiff has leave to amend, and shall file and serve, a Second Amended Complaint

16           within 14 days of entry of this order.

17       •   Defendant shall file a responsive pleading within 21 days of service of the Second

18           Amended Complaint.

19   Dated:  December 1, 2014

20

21

22                                          _____

23                                          Troy L. Nunley
                                            United States District Judge

24

25

26

27

28

9